**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**Pittsburgh Division**

| | |
|---|---|
| RONALD A. CUP and<br>MARK GREENAWALT,<br>on behalf of themselves and all other persons<br>similarly situated; and UNITED STEEL,<br>PAPER AND FORESTRY, RUBBER,<br>MANUFACTURING, ENERGY, ALLIED<br>INDUSTRIAL, AND SERVICE WORKERS<br>INTERNATIONAL UNION, AFL-CIO,<br><br>          Plaintiffs,<br><br>    v.<br><br>AMPCO-PITTSBURGH CORPORATION,<br>AKERS NATIONAL ROLL COMPANY,<br>and AKERS NATIONAL ROLL COMPANY<br>HEALTH & WELFARE BENEFITS PLAN,<br><br>       Defendants. | Case No._____<br><br>**COMPLAINT FOR BREACH OF<br>LABOR CONTRACT AND FOR<br>BREACH OF ERISA PLAN (CLASS<br>ACTION) AND TO COMPEL<br>ARBITRATION (INDIVIDUAL ACTION)**<br><br>Class Action<br><br>Demand for Jury Trial |

**COMPLAINT AND JURY DEMAND**

## I.    INTRODUCTION

Plaintiffs Ronald A. Cup  and Mark Greenawalt ("Class Representatives"), solely on

behalf of themselves as to Count I, and on behalf of themselves and all persons similarly situated

as to Counts II and III, and the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy,

Allied Industrial & Service Workers International Union, AFL-CIO ("USW"), bring this action

against Defendant Ampco-Pittsburgh Corporation ("Ampco"), its wholly-owned subsidiary

Defendant Akers National Roll Company ("Akers"), and Defendant Akers National Roll

Company Health & Welfare Benefits Plan (the "Health Plan"), and aver as follows:

1.      Counts II and II of this action are brought by Class Representatives on behalf of themselves and a class of similarly-situated retirees ("Retirees") and their eligible spouses, dependents and surviving spouses (collectively, "Class Members") pursuant to Rule 23 of the Federal Rules of Civil Procedure, and by the USW, which, along with predecessor unions, was the collective bargaining representative for certain employees of Akers and its predecessor companies.  The Class is defined below, but as a general matter most Class Members are younger than age 65, and the Retirees retired from Akers prior to March 3, 2015.

2.      Through years of employment, Retirees earned the right to receive retiree health care benefits for themselves and other Class Members until Medicare eligibility.  These rights were created through collective bargaining between Akers (and predecessor companies) and USW (and its predecessor unions) and the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO, CLC ("GMP"), which represented Retirees while they were employed at Akers' manufacturing facilities in Hyde Park, Pennsylvania, and Avonmore, Pennsylvania.  Hereinafter, all references to "USW" and "Akers" will include predecessors. The USW and GMP will be referred to collectively as "the Unions."

3.      The successive labor agreements between Akers and the Unions contained provisions which established Akers' obligation to provide retiree health care benefits until Class Members reached the age of Medicare eligibility.  Further, an agreement between Akers and the Unions covering the period 2015-2020 specifically provided that existing retirees would continue to receive health care benefits.  Despite these agreements, effective January 1, 2017, Akers unilaterally terminated the retiree health care plan it provided to Class Members.

4.      Because Class Members' retiree medical benefits were the result of bargaining between labor organizations and an employer, Akers/Ampco's actions are actionable in this

Court under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Defendants' conduct also violates Class Members' rights under one or more employee benefit plans, and is therefore actionable in this Court under Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).  In addition, because the governing collectively bargained agreements, including those currently in force, provide that disputes such as this one concerning retiree healthcare benefits are to be arbitrated and Defendants have refused to arbitrate, this refusal also violates Section 301 of the LMRA and is actionable in this Court.

## II.    JURISDICTION AND VENUE

5.    As all Counts in this Complaint raise federal questions, this Court has jurisdiction over them under 28 U.S.C. § 1331.  This Court also has jurisdiction over Counts I and II under LMRA § 301, 29 U.S.C. § 185, and over Count III under ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f).  Venue in this judicial district is proper under LMRA § 301, 29 U.S.C. § 185, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.    PARTIES

6.    Plaintiff Ronald Cup is an adult resident of Avonmore, Pennsylvania.  He worked for Akers at the Avonmore facility from 1987 until 2014, and he was a member of the USW Local 1138-3 Bargaining Unit.  Mr. Cup is 64 years old, and he has received retiree health care benefits from the Health Plan since his retirement in 2014.  Mr. Cup's spouse is 59 and has also received health care benefits from the Health Plan since Mr. Cup's retirement.  Effective January 1, 2017, the Health Plan ceased providing the health care benefits to Mr. Cup and his spouse that they have relied upon since his retirement.

7.      Plaintiff Mark Greenawalt is an adult resident of Apollo, Pennsylvania.  He worked for Akers at the Hyde Park facility from 1978 until 2010, and he was a member of the USW Local 1324 Bargaining Unit.  Mr. Greenawalt is 58 years old, and he has received retiree health care benefits from the Health Plan since his retirement in 2010.  Mr. Greenawalt's spouse is 55 and has also received health care benefits from the Health Plan since Mr. Greenawalt's retirement.  Effective January 1, 2017, the Health Plan ceased providing the health care benefits to Mr. Greenawalt and his spouse that they have relied upon since his retirement.

8.      Plaintiff USW is a labor organization headquartered in Pittsburgh, Pennsylvania. Plaintiff USW was known for decades as the United Steelworkers of America, AFL-CIO/CLC, before it changed its name in 2005 to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC.  For years, USW negotiated collective bargaining agreements with Akers that provided for retiree health care benefits for workers at the Avonmore and Hyde Park facilities.

9.      Defendant Ampco is a Pennsylvania corporation with its principal place of business located at 726 Bell Avenue, Suite 301, Carnegie, Pennsylvania 15106.  Ampco is the parent company of its wholly-owned subsidiary Akers.  It is an employer within the meaning of 29 U.S.C. § 152(2).

10.     Defendant Akers is a Delaware corporation with its principal place of business located at 400 Railroad Avenue, Avonmore, Pennsylvania 15618.  It is an employer within the meaning of 29 U.S.C. § 152(2).

11.     Defendants Akers and Ampco are referred to collectively in this Complaint as "Akers/Ampco."  Akers/Ampco is an employer  engaged in commerce, which has responsibility to provide retiree health care benefits to certain retirees of the Avonmore and Hyde Park

4

facilities.  Akers/Ampco is sued in its capacities as employer, plan sponsor and fiduciary. Akers/Ampco is qualified and registered to do business in Pennsylvania and has such extensive contacts within this judicial district that it "may be found" in this district within the meaning of 29 U.S.C. § 1132(e)(2).

12.    Defendant Health Plan is an "employee benefit plan" within the meaning of ERISA.  Akers is the plan sponsor and also a fiduciary of the Health Plan, and Akers/Ampco controls the Health Plan and is the administrator of the Health Plan.  Prior to January 1, 2017, the Health Plan provided retiree health care benefits to all Class Members.  Effective January 1, 2017, the Health Plan no longer provides the bargained retiree health care benefits to Class Members.

13.    The Health Plan is sued as a party that may be needed for just adjudication under Rule 19 of the Federal Rules of Civil Procedure, and also as a party responsible for providing benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

14.    Plaintiffs are informed and believe and thereupon allege that, at all pertinent times as to Akers and the Health Plan, and since the time of Ampco's acquisition of Akers in the first half of 2016 as to Ampco, each of the Defendants was the co-venturer, partner, alter ego, or in some manner agent or principal, or both, of the other Defendants, and in doing the things alleged was acting within the course and scope of such agency.

**IV.    STATEMENT OF FACTS**

15.    Akers/Ampco currently owns and operates the Avonmore facility, and Akers owned and operated the Hyde Park facility until about 2010.

16.     Akers and the Unions have been parties to a series of collectively bargained agreements ("CBAs") and Memoranda of Agreement ("MOAs," collectively with the CBAs, "Agreements") covering bargaining unit employees at the Avonmore and Hyde Park facilities.

17.     The CBAs contain or contained mandatory grievance and binding arbitration procedures for disputes between the Union (or its members) and Akers.  Excerpts from true and correct copies of three such example CBAs, the 2015 CBA for Local 1138-3; the 2012 CBA for Local 1138-3; and the 2008 CBA for Local 1324 are attached as Exhibit A, with the relevant language in all pertinent CBAs being substantially similar.

18.     The Local 1138-3 CBAs' grievance procedures apply to "differences . . . between the Company and the Union or its members as to the interpretation or application of, or compliance with the provisions of this Agreement. . ."

19.     Akers has previously accepted grievances related to health insurance benefits and processed them to final and binding arbitration.

20.     As part of the negotiations resulting in the Agreements, the Unions negotiated health benefits for employees and certain beneficiaries upon the employees' retirement.

21.     Retirees paid for these retiree health care benefits with foregone wages and by monthly payments after retirement, and the intent of the parties in negotiating the terms governing retiree health benefits was that, once a person retired, the benefits were "vested" in that they were not subject to unilateral termination or reduction by Akers/Ampco.

22.     The parties' intent to vest these benefits is demonstrated by, *inter alia*, the language of the Agreements.

23.     For example, the 1999 MOA, which consisted of a final proposal from Akers accepted by the Unions (a true and correct copy of which is attached hereto as Exhibit B;

Plaintiffs aver on information and belief that Exhibit B includes the final MOA terms), and

which governed the terms and conditions of employment of workers represented by the USW

and the GMP, provides:

> Employees who retire during the term of the 1999 Agreement will continue to be offered the option at the time of retirement to "buy up," until age 65 or Medicare eligible, from the Health Care normally available to retirees.

24.     This provision is significant because it shows that benefits for these retirees are

vested "until age 65 or Medicare eligible" and thus that these benefits survived the terms of the

Agreements.

25.     The Akers 1999 Program of Blue Cross Blue Shield Benefits described the health

benefits available for retirees, surviving spouses, and dependents, and it provided that

"Eligibility ceases for pensioners and spouses at age 65 . . . ."  A true and correct copy of this

program of benefits is attached as Exhibit C.

26.     The 2015 MOA (a true and correct copy of which is attached hereto as Exhibit D),

which governs the terms and conditions of employment of workers represented by the USW and

the GMP for the period March 1, 2015, through February 29, 2020, provides:

> Current retirees will remain on their existing Plan ($195.00 monthly premium). Future retirees will be enrolled in the health plan stated above for Active employees with a $195.00 monthly premium.  Company will pay premiums as listed above for the actives for future retirees starting on or after 4/1/2015.

27.     The course of negotiations also showed that the parties intended that retiree

health benefits would continue until age 65.  In the negotiations that produced the 2015

Agreements, Akers negotiators specifically stated to the USW bargainers that retirees and their

spouses would continue to receive benefits until they became eligible for Medicare at age 65.

28.     Akers representatives have represented to retirees at the time of retirement that

they and their spouses would continue to receive benefits until they reach Medicare eligibility.

29.     Ampco acquired Akers in the first half of 2016.

30.     Despite the parties' Agreements, by letters dated July 27, 2016, from Keith Zatawski, Director of Risk Management and Benefits, Ampco announced to "retirees (or surviving spouses of retirees) of Akers National Roll Company" who were "former Hyde Park Foundry Hourly employees" or "who retired prior to 3/1/2015 and who were represented by USW Local Unions 1138-3, 1138-4 or GMP Local 46" that "effective January 1, 2017, the Company will be modifying the retiree health benefits" by eliminating the Health Plan for pre-Medicare eligible retirees, spouses, or covered dependents and instead paying limited monthly reimbursements for health insurance purchased by Class Members on the private market.  True and correct copies of these letters are attached hereto as Exhibit E.

31.     According to these letters, the monetary value of the monthly reimbursement available to Class Members is limited, and the reimbursement is only available for five years. In addition, Class Members must shop to purchase plans on the private market.

32.     After reviewing the July 27, 2016 letters, the USW investigated and determined that Defendants' threatened action violated the Agreements, including the provisions with respect to retiree health benefits in the 2015 MOA.  The USW also determined that this matter fell within the ambit of the arbitration provision.

33.     No CBA provision expressly exempts this dispute from arbitration, and the parties did not intend to exclude this dispute from arbitration.

34.     On August 10, 2017, the USW filed a grievance pursuant to the CBAs challenging the reduction of negotiated retiree health benefits safeguarded by the Agreements, including the 2015 MOA.  A copy of this grievance is attached hereto as Exhibit F.

35. On August 17, 2016, Akers/Ampco gave notice that it would not arbitrate this grievance, without justification and in violation of the grievance and arbitration procedures of the CBAs. A copy of this notice is attached hereto as Exhibit G.

36. The Union attempted to advance the grievance further, but Akers/Ampco reiterated its refusal to process the grievance to arbitration.

37. All Class Members are burdened by the unilateral elimination of the retiree health care plan and benefits they had previously received and the imposition of reduced benefits.

38. Defendants are jointly and severally liable for the obligations arising under the collectively-bargained agreements to provide retirees health care benefits at the levels specified by the agreements.

39. By unilaterally reducing retiree health care benefits, Defendants breached their contractual and statutory obligations to Plaintiffs and to Class Members.

## V.     CLASS ACTION ALLEGATIONS

40. Class Representatives bring their alternative claims in Counts II and III of this action on behalf of themselves and a class consisting of all former employees of the Avonmore and Hyde Park facilities who were represented by the Unions at the time they retired (and their eligible spouses, dependents and surviving spouses), who, as of December 31, 2016, were receiving and/or were eligible to receive retiree health benefits through Akers/Ampco and the Health Plan and who, as of January 1, 2017, are no longer receiving such benefits despite not having attained Medicare eligibility before January 1, 2017.

41. The number of Class Members, which, upon information and belief, exceeds one hundred, is large enough that joinder of individual members in this action is impracticable.

42.     There are common questions of law and fact that relate to and affect Class Members -- including, *inter alia*, whether Akers/Ampco is contractually permitted to terminate its retiree health plan, as set forth in more detail below in Counts II and III of this Complaint.

43.     The relief sought is common to all Class Members as set forth below in the section titled, "Relief Requested."

44.      The claims of the Class Representatives are typical of the claims of all Class Members, namely that Defendants are obligated under LMRA § 301 and ERISA to provide them with retiree health care benefits, as provided under collectively-bargained agreements between Akers/Ampco and the Unions, and that Defendants could not unilaterally reduce these benefits. There is no conflict between the Class Representatives and any other Class Member with respect to this action.

45.     The Class Representatives will fairly and adequately protect the interests of the Class Members.  Attorneys for the Class Representatives are experienced and capable in the field of labor law and ERISA and have successfully litigated numerous LMRA and ERISA class actions involving retiree benefits of former union employees.

46.     This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1)(A).  Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

47.     This action is also properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Defendants have acted on grounds generally applicable to the class by unilaterally changing the retiree health care benefits they are obligated to provide

to Class Members, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

48.     Alternatively, this action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VI.     COUNT I

### Action to Compel Arbitration, Actionable under LMRA § 301
### (Against Akers/Ampco by the USW and Ronald A. Cup and Mark Greenawalt, in their individual capacities)

49.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.  Akers/Ampco's refusal to accept the grievance and process it in accordance with the Agreements' arbitration provisions violates Akers/Ampco's contractual obligations. Akers/Ampco's refusal is therefore actionable under Section 301 of the LMRA, 29 U.S.C. § 185.

## VII.     COUNT II

### Violation of Collective Bargaining Agreements, Actionable under LMRA § 301
### (Alternative Claim Against Akers/Ampco by the USW and Ronald A. Cup and Mark Greenawalt, in their representative capacities)

50.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

51.     The claim set forth in this Count II is brought, as an alternative to the claim set forth in Count I, by Plaintiffs against Akers/Ampco in the event that the Court determines that Akers/Ampco is not obligated to arbitrate the grievance.  The claim is for breach of the Agreements under Section 301 of the LMRA, 29 U.S.C. § 185.

52.    The Agreements described above providing for retiree health care benefits are

"contract[s] between an employer and a labor organization" within the meaning of LMRA § 301,

29 U.S.C. § 185.

53.    These contracts conferred upon all Class Members a vested right to retiree health

care benefits until Medicare eligibility, or, in the alternative, did not permit Akers/Ampco to

terminate the existing retiree health care benefits on January 1, 2017.

54.    By unilaterally reducing this coverage, Akers/Ampco has breached these

contracts.

55.    Akers/Ampco's breach of its collectively bargained obligations is actionable

under LMRA § 301, 29 U.S.C. § 185.

## VIII.    COUNT III

### Violation of Employee Benefit Plan, Actionable under ERISA § 502(a)
### (Alternative Claim Against all Defendants by Ronald A. Cup and Mark Greenawalt, in
### their representative capacities)

56.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth

here.

57.    Defendants are obligated to provide retiree health care benefits pursuant to the

terms of the *negotiated* governing ERISA documents.

58.    The Agreements described above providing for retiree health care benefits for

Class Members are "plan documents."

59.    Defendants violated the terms of the Agreements by unilaterally reducing these

benefits.

60.    Defendants' repudiation of negotiated terms of the Health Plan is actionable

under  ERISA  §§ 502(a)(1)(B) and (a)(3),  29  U.S.C.  §§ 1132(a)(1)(B)  and (a)(3).  These

ERISA provisions allow a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and further "to enjoin any act or practice which violates . . . the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce . . . the terms of the plan." Additionally, a participant suing under these provisions is entitled to interest on any retroactive amounts awarded.

## IX.    RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  As to Count I, enter a judgment requiring Defendants to proceed to arbitration on an expedited basis of the described grievance under the provisions of the CBAs, and declaring that Defendants have breached their obligation in failing and refusing to do so;

B.  As to Counts II and III (in the alternative, if the Court denies relief on Count I),

   a.  Certify this action as a class action and appoint Feinstein Doyle Payne & Kravec, LLC as counsel for the Class.

   b.  Declare that Defendants, by the conduct described above, violated the terms of the Agreements and that the retiree health care benefits provided by the Agreements cannot be unilaterally terminated or modified by Defendants;

   c.  Direct Defendants to restore the retiree health care benefits provided to Class members under the Agreements and permanently enjoin Defendants from terminating or modifying such benefits in the future.

   d.  Award to Class Representatives and to Class Members retiree health care benefits pursuant to the terms of the Agreements, and/or monetary damages or

restitution or other monetary relief (plus interest), and/or other equitable relief

such as reinstatement or reformation, as necessary, to restore them to the position

in which they would have been but for Defendants' contractual and statutory

violations.

C.  As to all Counts, award Plaintiffs their fees and costs incurred in this action; and grant the

parties such other and further relief as the Court deems just and proper.

## X.    JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

Dated:  February 8, 2017                          Respectfully submitted,

                                              s/ Pamina Ewing
                                                Pamina Ewing (PA No. 59244)

Nathan Kilbert (PA No. 313939)         Joel R. Hurt (PA No. 85841)
Assistant General Counsel              Ruairi McDonnell (PA No. 316998)
United Steelworkers                    FEINSTEIN DOYLE PAYNE
Five Gateway Plaza, Room 807             & KRAVEC, LLC
Pittsburgh, PA  15222                  Law & Finance Building, Suite 1300
Telephone:  412-562-2562               429 Fourth Avenue
Email:  nkilbert@usw.org               Pittsburgh, PA  15219
                                       Telephone:  412-281-8400
*Counsel for Plaintiff USW*            Fax:  412-281-1007
                                       Email:  pewing@fdpklaw.com
                                               jhurt@fdpklaw.com
                                               rmcdonnell@fdpklaw.co

                                       *Counsel for Plaintiffs*