# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

## Pittsburgh Division

| | |
|---|---|
| RONALD A. CUP, on behalf of himself and all other persons similarly situated; and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL, AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, <br><br> Plaintiffs, <br><br> v. <br><br> AMPCO-PITTSBURGH CORPORATION, AKERS NATIONAL ROLL COMPANY, and AKERS NATIONAL ROLL COMPANY HEALTH & WELFARE BENEFITS PLAN, <br><br> Defendants. | Civ. A. No. 2:17-cv-00189-AJS <br><br> Judge Arthur J. Schwab <br><br> Class Action <br><br> Demand for Jury Trial |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

1.  The United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO ("USW") and Ronald A. Cup ("Class Representative"), on behalf of himself and all persons similarly situated, as to Count I, and the Class Representative, on behalf of himself and all persons similarly situated, as to Count II, bring this action against Defendant Ampco-Pittsburgh Corporation ("Ampco"), its wholly-owned subsidiary Defendant Akers National Roll Company ("Akers"), and, as to Count II, Defendant Akers National Roll Company Health & Welfare Benefits Plan (the "Health Plan").

The Class Representative proceeds on behalf of himself and a class of similarly-situated retirees ("Retirees") and their eligible spouses, dependents and surviving spouses (collectively, "Class Members") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs aver as follows:

2.  Through years of employment, Retirees earned the right to receive retiree health care benefits for themselves and their beneficiaries until Medicare eligibility. Notwithstanding Retirees having earned the right to receive these benefits until Medicare eligibility, Plaintiffs limit their claims herein to the term of the governing 2015 Memorandum of Agreement, which is discussed below.

3.  Retirees' rights were created through collective bargaining between Akers (and predecessor companies) and the USW (and its predecessor unions, including the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO, CLC), which represented Retirees while they were employed at Akers' manufacturing facilities in Avonmore, Pennsylvania. Hereinafter, all references to "USW" will include its predecessors, and all references to "Company" will include Akers' predecessors as well as Akers' parent Ampco.

4.  Collectively bargained agreements between the Company and the USW contained provisions which established the Company's obligation to provide retiree healthcare benefits until Class Members reached the age of Medicare eligibility. Most recently, an agreement between the Company and the USW executed in 2015 and covering the period 2015-2020, the 2015 Memorandum of Agreement, specifically provides that "current retirees" would continue to receive benefits through their existing healthcare plan, that active employees upon their retirement in the future would be enrolled in a specified healthcare plan, and that both groups would pay a $195 monthly premium for these benefits. Despite this bargained

agreement, effective January 1, 2017, the Company unilaterally terminated the retiree health care plan it provided to current retirees, *i.e.*, the Retirees.

5.  The Company's actions are actionable in this Court under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), because Class Members' retiree medical benefits were the result of bargaining between labor organizations and an employer. In addition, Defendants' conduct violates Class Members' rights under one or more employee benefit plans, and is therefore actionable in this Court under Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

## II.  JURISDICTION AND VENUE

6.  All Counts in this Complaint raise federal questions, this Court has jurisdiction over them under 28 U.S.C. § 1331. This Court also has jurisdiction over Count I under LMRA § 301, 29 U.S.C. § 185, and over Count II under ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f). Venue in this judicial district is proper under LMRA § 301, 29 U.S.C. § 185, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.  PARTIES

7.  Plaintiff Ronald Cup is an adult resident of Avonmore, Pennsylvania. He worked for the Company at the Avonmore facility from 1987 until 2014, and he was a member of the USW Local 1138-3 Bargaining Unit. Mr. Cup is 66 years old, and he received retiree health care benefits from the Health Plan after his retirement in 2014. Mr. Cup's wife is 61 and also received health care benefits from the Health Plan following Mr. Cup's retirement. Effective January 1, 2017, the Health Plan ceased providing the health care benefits to Mr. Cup and his wife that they have relied upon since his retirement.

8. Plaintiff USW is a labor organization headquartered in Pittsburgh, Pennsylvania. Plaintiff USW was known for decades as the United Steelworkers of America, AFL-CIO/CLC, before it changed its name in 2005 to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC.  For years, USW negotiated collectively bargained agreements with the Company that provided for retiree health care benefits for workers at the Avonmore facility.

9. Defendant Ampco is a Pennsylvania corporation with its principal place of business located at 726 Bell Avenue, Suite 301, Carnegie, Pennsylvania 15106.  Ampco is the parent company of its wholly-owned subsidiary, Defendant Akers.  It is an employer within the meaning of 29 U.S.C. § 152(2).

10. Defendant Akers is a Delaware corporation with its principal place of business located at 400 Railroad Avenue, Avonmore, Pennsylvania 15618.  It is an employer within the meaning of 29 U.S.C. § 152(2).  Akers is an employer engaged in commerce which has responsibility to provide retiree health care benefits to certain retirees of the Avonmore facilities. Akers is sued in its capacities as employer, plan sponsor and fiduciary.  Akers is qualified and registered to do business in Pennsylvania and has such extensive contacts within this judicial district that it "may be found" in this district within the meaning of 29 U.S.C. § 1132(e)(2).

11. Defendant Health Plan is an "employee benefit plan" within the meaning of ERISA.  Akers is the plan sponsor and also a fiduciary of the Health Plan, and Akers controls the Health Plan and is the administrator of the Health Plan.  Before January 1, 2017, the Health Plan provided retiree health care benefits to all Class Members.  Effective January 1, 2017, the Health Plan no longer provides health care benefits to Class Members.

4

12. The Health Plan is sued as a party that may be needed for just adjudication under Rule 19 of the Federal Rules of Civil Procedure, and also as a party responsible for providing benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

13. Plaintiffs are informed and believe and thereupon allege that, at all pertinent times as to Akers and the Health Plan, and since the time of Ampco's acquisition of Akers in the first half of 2016 as to Ampco, each of the Defendants was the co-venturer, partner, alter ego, or in some manner agent or principal, or both, of the other Defendants, and in doing the things alleged was acting within the course and scope of such agency.

### IV.  STATEMENT OF FACTS

14. The Company currently owns and operates the Avonmore facility.

15. The Company and the USW have been parties to a series of collectively bargained agreements, including Labor Agreements ("CBAs") and Memoranda of Agreement ("MOAs").  The Company and USW bargained these Agreements at the same time, and they did so in 2015, resulting in the "2015 MOA" and the "2015 CBA."

16. All MOA provisions are binding contractual undertakings.  The fact that an associated CBA may repeat some but not all MOA provisions does not nullify the non-included MOA provisions.  With respect to benefits, the Company and USW had a practice of not detailing these benefits in the CBAs but abiding by the agreements in the MOA.

17. As part of the negotiations resulting in the CBA and MOA Agreements, the Company and the USW typically addressed health benefits for employees, retirees, and the beneficiaries of employees and retirees, and they did so in 2015.  However, the Company and USW never materially reduced benefits for current retirees and their beneficiaries which had already been negotiated.

18. The 2015 MOA (attached hereto as A), governs the terms and conditions of employment of workers represented by the USW as well as retiree benefits for the period March 1, 2015, through February 29, 2020. It in pertinent part provides:

> Current retirees will remain on their existing Plan ($195.00 monthly premium). Future retirees will be enrolled in the health plan stated above for Active employees with a $195.00 monthly premium. Company will pay premiums as listed above for the actives for future retirees starting on or after 4/1/2015.
>
> ***
>
> Retiree Heath/Life Insurance Eligibility: An employee who "retires" on or after the attainment of age 55 with 10 years of service with the company will be eligible for company health and life benefits as provided by the company.

19. The 2015 MOA, which was prepared and typed by the Company, represents the final agreement of the Company and the USW with respect to retiree healthcare insurance, as well as with respect to a number of other terms of employment, particularly with respect to employee benefits.

20. The 2015 MOA was voted upon by the USW membership to conclude the process of collective bargaining. The 2015 CBA was not presented to the membership.

21. The 2015 MOA sets forth the parties' bargained terms for "Pension Multipliers" (identifying specific multipliers for each CBA year); "Life Insurance" (increasing coverage to specified amounts for active employees and for future retirees); "Dental Plan" (increasing yearly maximum); and "DC Plan" (specifying an increased company contribution to employees' 401-K plan). 2015 MOA at 2-3.

22. The 2015 MOA also specifies the "Medical Plan" to be provided to "all Active employees", providing: "All active employees with be transferred to the new health plan. $1,500 Individual/$3,000 Family deductible for in-network, $3,000 Individual/$6,000 out of

network. The company will cover $1,500 for individuals and $3,000 for family for in network or out of network for each year of the contract."

23.   Like the retiree medical benefits bargained for and identified in the 2015 MOA, none of these other negotiated benefits identified in the parties' 2015 MOA are repeated in 2015 CBA.

24.   Upon information and belief, the Company has continued to provide the above negotiated terms and employee benefits described in the parties' 2015 MOA and not described in their 2015 CBA, other than retiree medical benefits.

25.   The USW and the Company never intended a provision in the 2015 CBA referencing "[a]greements for the plant" (or any such provisions in prior CBAs) to include the collectively bargained MOAs, and never treated the MOAs as subject to this provision. Rather, the referenced "plant" agreements cover short term matters that may arise during the term of the collectively bargained agreements.

26.   The 1999 MOA, which consisted of a final proposal from the Company accepted by the USW, similarly provided:

> Employees who retire during the term of the 1999 Agreement will continue to be offered the option at the time of retirement to "buy up," until age 65 or Medicare eligible, from the Health Care normally available to retirees.

A true and correct copy of the 1999 MOA is attached hereto as B.

27.   For over twenty years, the Company provided benefits to pre-Medicare Class Members consistent with the terms set forth in the 1999 MOA, the 2015 MOA, and other MOAs addressing retiree healthcare benefits.

28.   During the negotiations that produced the 2015 Agreements, Company negotiators specifically stated to USW bargainers that Retirees and their spouses would continue to receive benefits until they became eligible for Medicare at age 65.

7

29. Other documents confirm that Class Members are to receive the healthcare benefits identified in the parties' MOAs. A 1996 report prepared by Retirement Benefit Services, Inc., addressing the Company's post-retirement benefit obligations stated:

> Health and life insurance benefits continue after an employee retires. The health benefits cease at the time a former employee becomes eligible for Medicare benefits. Dependents of the former employee also receive Company paid health benefits until they become eligible for Medicare coverage.

The 1996 report similarly states: "Company paid medical benefits for all other retirees and employees ceases on the individual's eligibility for Medicare benefits."

30. Company representatives represented to retirees at the time of retirement that they and their spouses would continue to receive benefits until they are eligible for Medicare.

31. Ampco acquired Akers in the first half of 2016.

32. After Ampco acquired Akers, and contrary to the parties' Agreements, by letter dated July 27, 2016, the Company announced to "retirees (or surviving spouses of retirees) of Akers National Roll Company" "who retired prior to 3/1/2015 and who were represented by USW Local Unions 1138-3, 1138-4 or GMP Local 46" that "effective January 1, 2017, the Company will be modifying the retiree health benefits" by eliminating the Health Plan for pre-Medicare eligible retirees, spouses, or covered dependents and instead paying limited monthly reimbursements for health insurance purchased by Class Members on the private market. A true and correct copy of this letter is attached hereto as C.

33. According to the Company's letter, the monetary value of the monthly reimbursement available to Class Members is limited, and the reimbursement is only available for five years. In addition, Class Members must shop to purchase plans on the private market.

34. In a 10-K filing with the Securities and Exchange Commission for the year 2016, Ampco stated that as part of its acquisition of Akers, it assumed the obligations for two

postretirement benefits plans, which it refers to as "Akers OPEB plans," covering retiree medical insurance benefits. Ampco further stated:

> In August 2016, the Corporation modified the Akers OPEB plans effective January 1, 2017 whereby retiree health benefits for certain groups of pre-Medicare eligible employees will be replaced with a monthly stipend. The plan changes resulted in a reduction in prior service costs decreasing plan liabilities by approximately $4,762…

Because each $1.00 in the 10-K filing represents $1,000, the Company had admitted to decreasing its liability for retiree healthcare benefits for Akers retirees by approximately $4,762,000.

35. After reviewing the July 27, 2016 letter, the USW investigated and determined that the Company's threatened action violated the provisions with respect to retiree health benefits in the 2015 MOA. The Company eliminated the benefits which the parties' bargained for and described in their 2015 MOA effective January 1, 2017 even though the 2015 MOA by its terms extends until February 29, 2020.

36. All Class Members are burdened by the unilateral elimination of the retiree health care plan and benefits they had previously been promised and the imposition of reduced benefits.

37. Defendants are jointly and severally liable for the obligations arising under the collectively-bargained agreements to provide retirees health care benefits at the levels specified by the agreements.

38. By unilaterally reducing retiree health care benefits, Defendants breached their contractual and statutory obligations to Plaintiffs and to Class Members.

## V.   CLASS ACTION ALLEGATIONS

39. The Class Representative brings Counts I and II of this action on behalf of himself and a class consisting of all former employees of the Avonmore facility who were

represented by the USW at the time they retired (and their eligible spouses, dependents and surviving spouses), who, as of December 31, 2016, were receiving and/or were eligible to receive retiree health benefits through the Company and the Health Plan and who, as of January 1, 2017, are no longer receiving such benefits despite not having attained Medicare eligibility before January 1, 2017.

40. The number of Class Members, which, upon information and belief, exceeds fifty, is large enough that joinder of individual members in this action is impracticable.

41. There are common questions of law and fact that relate to and affect Class Members -- including, *inter alia*, whether the Company is contractually permitted to terminate its retiree health plan during the term of the 2015 MOA, as set forth in more detail below in Counts I and II of this Complaint.

42. The relief sought is common to all Class Members as set forth below in the section titled, "Relief Requested."

43. The claims of the Class Representative are typical of the claims of all Class Members, namely that Defendants are contractually obligated under LMRA § 301 and ERISA to provide them with retiree health care benefits, as provided under the 2015 MOA, and that Defendants could not unilaterally reduce these benefits. There is no conflict between the Class Representative and any other Class Member with respect to this action.

44. The Class Representative will fairly and adequately protect the interests of the Class Members. Counsel for the Class Representative are experienced and capable in the field of labor law and ERISA and have successfully litigated numerous LMRA and ERISA class actions involving retiree benefits of former union employees.

45. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1)(A). Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

46. This action is also properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Defendants have acted on grounds generally applicable to the class by unilaterally changing the retiree health care benefits they are obligated to provide to Class Members, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

47. Alternatively, this action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VI.   COUNT I

**Violation of 2015 MOA Actionable under LMRA § 301**
**(Against Defendants Ampco and Akers by the USW**
**and Ronald A. Cup in his representative capacity)**

48. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

49. This claim is for breach of the parties' collectively bargained 2015 MOA under Section 301 of the LMRA,

50. The 2015 MOA provides for retiree health care benefits throughout its term and is a "contract[s] between an employer and a labor organization" within the meaning of LMRA § 301, 29 U.S.C. § 185.

51. This contract reaffirmed the right of current retiree Class Members to remain on their then-existing health insurance plan, and for future retirees to be enrolled in another specified health plan, both for a set specified monthly premium.

52. The 2015 MOA on its face precluded the Company from terminating the existing retiree health care benefits and reducing coverage, as it did on January 1, 2017.

53. By terminating existing benefits and reducing coverage, the Company breached the 2015 MOA.

54. The Company's breach of its collectively bargained obligations is actionable under LMRA § 301, 29 U.S.C. § 185.

## VII.   COUNT II

**Violation of Negotiated Employee Benefit Plan, Actionable under ERISA § 502(a)**
**(Against all Defendants by Ronald A. Cup in his representative capacity)**

55. Plaintiff Cup incorporates by reference all preceding allegations as though fully set forth here.

56. Defendants are obligated to provide retiree health care benefits pursuant to the terms of negotiated governing ERISA plan documents.

57. The 2015 MOA is a "plan document."

58. Defendants violated the terms of the 2015 MOA by unilaterally terminating Class Members' existing health insurance plan and reducing their retiree healthcare benefits.

59. Defendants' repudiation of negotiated plan terms is actionable under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). These ERISA provisions allow

12

a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and further "to enjoin any act or practice which violates . . . the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce . . . the terms of the plan."  Additionally, a participant suing under these provisions is entitled to interest on any retroactive amounts awarded.

## IX.  RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A. As to both Counts,

   a. Certify this action as a class action and appoint Feinstein Doyle Payne & Kravec, LLC as counsel for the Class.

   b. Declare that Defendants, by the conduct described above, violated the terms of the 2015 MOA, and that the retiree health care benefits provided therein cannot be unilaterally terminated or modified by Defendants;

   c. Direct Defendants to restore the retiree health care benefits provided to Class Members under the 2015 MOA and permanently enjoin Defendants from terminating or modifying such benefits as to each Class Member in the future, until such time as each Class Member reaches Medicare-eligibility or the 2015 MOA expires on February 29, 2020, whichever comes first;

   d. Award to the Class Representative and to Class Members retiree health care benefits pursuant to the terms of the 2015 MOA, and/or monetary damages or restitution or other monetary relief (plus interest), and/or other equitable relief such as reinstatement or reformation, as necessary, to restore them to the position

in which they would have been but for Defendants' contractual and statutory violations.

B. Award Plaintiffs their fees and costs incurred in this action; and grant the parties such other and further relief as the Court deems just and proper.

## IX.   JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

Dated:  November 2, 2018

Respectfully submitted,

 s/ Pamina Ewing
   Pamina Ewing (PA No. 59244)
   pewing@fdpklaw.com

Nathan Kilbert (PA No. 313939)
Assistant General Counsel
**United Steelworkers**
Five Gateway Plaza, Room 807
Pittsburgh, PA  15222
Telephone:  412-562-2562
Email:  nkilbert@usw.org

*Counsel for Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO*

Joel R. Hurt (PA No. 85841)
Ruairi McDonnell (PA No. 316998)
**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA  15219
Telephone:  412-281-8400
Fax:  412-281-1007
Email:  jhurt@fdpklaw.com
       rmcdonnell@fdpklaw.com

*Counsel for Plaintiffs*

14